# CONFIDENTIALITY, NON-COMPETITION, AND NON-SOLICITATION AGREEMENT

This Confidentiality, Non-Competition and Non-Solicitation Agreement (this "Agreement") is entered into as of <u>December 8</u>, 20<u>13</u>, by and between IDMWORKS, INC., a Delaware corporation (IDMWORKS, along with any of its affiliates and subsidiaries, are collectively referred to as "IDMWORKS") and <u>Gaurav Pophaly</u>, an individual ("Employee").

## WITNESSETH:

**WHEREAS**, IDMWORKS is in the information technology business (said business is hereafter referred to as the "Business") and has established a fine reputation and substantial goodwill in that Business and serves clients throughout; and

**WHEREAS**, both IDMWORKS and Employee acknowledge that IDMWORKS has a substantial and legitimate business interest in, among other things, its confidential business information, trade secrets, customer and vendor lists, methods of business operation, and its substantial relationships with specific prospective and existing customers;

**WHEREAS**, Employee acknowledges that the business of IDMWORKS is a very competitive business;

**WHEREAS**, IDMWORKS desires to retain Employee on an at-will basis to provide certain services ("Services") on behalf of IDMWORKS; and

**WHEREAS**, Employee will have access to IDMWORKS' confidential business information, trade secrets, customer and vendor lists, methods of business operation and other valuable proprietary information used in the Business; and

**WHEREAS**, Employee acknowledges that he/she is to be employed in the position of <u>Identity and Access Engineer</u> for IDMWORKS, in which IDMWORKS reposes a great deal of responsibility, trust, and reliance, wherein Employee has access to IDMWORKS' sales reports, customer lists, vendor lists, purchasing reports, business development materials, business software, and IDMWORKS' plans and strategies;

**WHEREAS**, IDMWORKS desires to protect the assets and goodwill of the Business; and

**WHEREAS**, it is a condition to retaining Employee to perform services for IDMWORKS that Employee sign this Confidentiality, Non-Competition, and Non-Solicitation Agreement.

**NOW, THEREFORE**, for and in consideration of the mutual covenants and promises herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as

**EXHIBIT "A"**

follows:

1. **Recitals**. The foregoing recitals are true and correct and made a part of this Agreement.

2. **Employment**. Employee has entered into this Agreement and made the covenants hereinafter set forth in order to induce IDMWORKS to retain Employee to perform Services for IDMWORKS, and Employee acknowledges that Employee would not be retained to provide such Services without Employee signing this Agreement. Nothing contained herein shall in any way alter the employment at-will nature of Employee's employment or provide any assurance by IDMWORKS of continuing employment. Employee and IDMWORKS retain the right to terminate the employment relationship at any time for any reason or no reason, with or without cause or notice. IDMWORKS retains the sole and complete discretion to alter any term or condition of employment, including, but not limited to, Employee's hours of work, position, compensation, and it is specifically agreed that if IDMWORKS should do so, such change(s) shall be no defense to enforcement of this Agreement.

Employee represents and warrants that Employee is not subject to any restrictive agreement, other contractual or legal obligation, limitation, or prohibition that would prohibit Employee from entering into this Agreement or accepting employment by, or continuing employment with, IDMWORKS. In the event of a breach of this warranty, Employee agrees to indemnify and hold IDMWORKS harmless from any and all claims, costs, expenses, attorney's fees, lawsuits, or other liability arising from such breach.

3. **Confidential Information**.

(a) The term "Confidential Information" means any proprietary or confidential information of any kind, nature or description, whether written or stored on other media or devices, concerning any matters affecting or relating to the Business (all references to the Business shall also include all matters related to IDMWORKS), including without limitation, the names of Customers (as hereafter defined) and services rendered for any of its Customers; documents or materials prepared for Customers, and any other Customer information; all contractual terms with Customers, the marketing plans for the Business, proposals made to potential customers, the names of potential customers, methods and related data; historical and projected financial information; budgets; price lists and all other records used in the Business; any other confidential information of, about or concerning the Business of IDMWORKS; and any agreements between Employee and IDMWORKS. The term "Confidential Information" shall also include all other information relating to IDMWORKS including, without limitation, projections, financial statements and information, strategies, ownership structure and information, investments, customer and supplier lists and information, employee information, product sources, products, price lists, advertising and marketing plans, methods of sales and business contracts, intellectual property, trade secrets, and any other information not available to the general public including, without limitation, IDMWORKS' business plans, the identity of actual and prospective suppliers of IDMWORKS, and businesses that IDMWORKS is considering acquiring and/or investing in. The Confidential Information is and shall be deemed

to be important, material and confidential trade secrets that affect the successful conduct of the Business and goodwill of the Business. The terms "Customer" or "Customers") when used in this Agreement shall mean any one that has purchased consulting services or software or other products from IDMWORKS at any time prior to the date of this Agreement, as well as anyone that purchases consulting services or software or other products from IDMWORKS at any time during the term that Employee is providing Services to IDMWORKS.

(b) Notwithstanding the provisions of Section 2(a) above, Confidential Information shall not include any information which: (i) is or becomes available to the public other than as a result of the actions of Employee in violation of this Agreement; or (ii) becomes lawfully available to Employee from a source other than IDMWORKS or its agents or representative provided that such source is not subject to or bound by any duty or obligation of confidentiality with respect to such information.

(c) With respect to this Confidential Information, Employee agrees as follows:

1. **Nondisclosure; Use Restricted**. Employee will not, during or after the term of his employment: (i) publish, disclose, or make accessible any Confidential Information or any part thereof, to any person, firm, corporation, or association or other entity for any reason whatsoever; or (ii) use or generate benefit from such Confidential Information, except during employment with IDMWORKS and for the benefit of IDMWORKS, without prior written permission of IDMWORKS.

2. **Safeguard**. Employee shall take all reasonable precautions, including the establishment of appropriate procedures and disciplines if necessary, to safeguard and protect the confidential nature of the Confidential Information.

3. **Return of Confidential Information**. At the time that Employee ceases working for IDMWORKS, Employee shall deliver to IDMWORKS all Confidential Information which Employee has received and has not previously returned to IDMWORKS or which is otherwise in Employee's possession, including, but not limited to, any papers, lists, books, files, and computer stored or generated information, including any information stored on any computer hard drive, diskettes, external hard drives including flash drives, or other format, to IDMWORKS prior to or at the termination of employment with IDMWORKS. All files, records, documents, or other data owned, procured, or generated by IDMWORKS relating to the Confidential Information identified above, shall remain the exclusive property of IDMWORKS.

4. **Irreparable Harm; Injunctive Relief**. Employee acknowledges and agrees that disclosure of Confidential Information by Employee would cause irreparable harm to IDMWORKS. In the event there is a breach or a threatened breach by Employee of the provisions of this Paragraph Three (3), including any and/or all subparts, IDMWORKS shall be entitled to an injunction restraining Employee from disclosing in whole or

in part such information, generating a benefit from such information, or rendering a service to any person, firm, corporation, association, or other entity to whom such information has been disclosed. Nothing herein shall be construed as prohibiting IDMWORKS from pursuing such other remedies as may be available to it for such breach or threatened breach, including recovery of damages from Employee.

4. **Noncompetition.** During the Restriction Period (defined below), Employee agrees that Employee shall not in any capacity, directly or indirectly, whether as an employee, a company, an officer, a director, an employee, a consultant, an agent, a principal, a partner, an owner, or in any other individual or capacity:

(a) provide services of any kind to any company that Employee has previously provided consulting services to on behalf of IDMWORKS;

(b) provide services of any kind to any company that IDMWORKS has a partnership agreement with;

(c) provide services of any kind to any company that another Employee or independent contractor working for IDMWORKS has provided consulting services to on behalf of IDMWORKS regardless of whether or not such services were provided during the term of Employee's employment; and/or

(d) accept employment or establish any business relationship (including a consulting relationship), direct or indirect, with any Competitor (as defined herein) of IDMWORKS (unless IDMWORKS has given its written approval to Employee to work for a Competitor after determining such work will not be harmful to IDMWORKS). For purposes of this paragraph, a "Competitor" shall mean any company that sells goods and services in the same market in which IDMWORKS sells its goods and services that compete with the goods and services being sold by IDMWORKS. IDMWORKS and Employee agree that IDMWORKS competes throughout the United States and in Canada, but that the prohibition on competition applies only to: (1) a 100-mile radius from any location where IDMWORKS conducts and/or conducted business during the term of Employee's employment; (2) a 100-mile radius from the place(s) of business of any IDMWORKS' Customer(s) regardless of whether Employee provided Services to such Customer(s) during the term of Employee's employment; (3) a 100-mile radius from the place(s) of business of any Potential Customer(s) (as defined below in Paragraph Five (5)); and/or (4) a 100-mile radius from any location where IDMWORKS has actively solicited business during the term of Employee's employment.

5. **Non-Solicitation.** Employee agrees that during the Restrictive Period and regardless of the reasons for the termination of Employee's employment with IDMWORKS, whether terminated for whatever reason or no reason, with or without notice or cause, Employee shall not:

(a) directly or indirectly engage, hire, employ, or solicit any employee of IDMWORKS, or any subsidiary or affiliate of IDMWORKS, or otherwise induce or attempt to

induce any employee of IDMWORKS or any subsidiary or affiliate of IDMWORKS, to leave the employment of IDMWORKS or alter the employment relationship of any employee with IDMWORKS and, in the event of an unsolicited approach by a current employee, will not communicate with that individual concerning employment opportunities and will not influence others to hire the individual who is or has been so employed by IDMWORKS;

(b) provide any assistance, encouragement, information, or suggestion to any person or entity regarding the solicitation or hiring of any employee of IDMWORKS or any of its subsidiaries or affiliates;

(c) directly or indirectly, solicit or contact or attempt to contact any of IDMWORKS', or any subsidiary's or affiliate's of IDMWORKS, past or present Customers for the purpose of selling to such past or present Customers services and/or goods which compete with those being offered by IDMWORKS, or any subsidiary or affiliate of IDMWORKS;

(d) directly or indirectly, solicit or contact or attempt to contact any of IDMWORKS', or any subsidiary's or affiliate's of IDMWORKS, past or present Customers for the purpose of interfering with IDMWORKS' relationship, or any subsidiary or affiliate's relationships, with its Customers;

(e) contact any of the potential customers of IDMWORKS that were contacted by Employee during the period Employee was working for IDMWORKS ("Potential Customers") for the purpose of selling to them services and/or goods which compete with those being offered by IDMWORKS or any subsidiary or affiliate of IDMWORKS; and/or

(f) accept the business of or provide services for any Customer or Potential Customer of IDMWORKS.

6. **Restriction Period**. For purposes of this Agreement the term "Restriction Period" shall mean the period during which Employee is working for IDMWORKS and for a period of two (2) years from and after Employee's termination, for whatever reason or no reason, with or without notice or cause, of employment with IDMWORKS. The Restriction Period is not intended to restrict Employee from performing Services on behalf of IDMWORKS.

Employee agrees that IDMWORKS may communicate my obligations under this Agreement to any third party, including, but not limited to my employers and prospective employers.

7. **Tolling**. In the event of any breach hereof, the Restriction Period shall be tolled until the date of entry of an order granting IDMWORKS preliminary or temporary injunctive relief and shall continue uninterrupted for the remainder of the period of restriction.

8. **Non-Disparagement.** Unless required by legal process, Employee agrees that he/she will not make any disparaging remarks that might have a harmful effect on the reputation of IDMWORKS, whether orally or in writing, about IDMWORKS, including its subsidiaries,

affiliates, and/or related entities, its products, services, officers, managers, supervisors and employees, to any persons whatsoever.

9. **Remedies for Breach of Paragraphs Three, Four, Five and Eight.** IDMWORKS and Employee acknowledge that the remedies at law for any breach of Paragraphs Three (3), Four (4), Five (5), and/or Eight (8) will be inadequate and that IDMWORKS shall be entitled to injunctive relief without notice to Employee, and that such injunctive relief shall not be exclusive, but shall be in addition to any rights or remedies IDMWORKS or its successors may have for such breach. IDMWORKS and Employee recognize and agree that damages in such event are difficult to ascertain, though great and irreparable, and that this Agreement shall in no event prevent Employer from obtaining injunctive relief but rather shall entitle IDMWORKS to such relief.

IDMWORKS and Employee further recognize and agree that given the difficulty of ascertaining the great and irreparable damages IDMWORKS will suffer in the event of any breach of Paragraphs Three (3), Four (4), Five (5) and/or Eight (8), Employee will pay IDMWORKS the aggregate of $10,000 per breach of these paragraphs. IDMWORKS and Employee agree that this liquidated damages provision is not a penalty of any kind, but instead, intended to be a reasonable measure of the anticipated probable harm resulting from any such breach.

10. **Damages Presumed.** If the Employee violates any provision of this Agreement, directly or indirectly, either as an individual on Employee's own account or as a partner, joint venturer, officer, director, stockholder, employee, agent, independent contractor, or otherwise, it shall be presumed that any and all services provided by the Employee (or the corporation, partnership, limited liability company, joint venture, association, or other business organization with which Employee is associated) in competition with IDMWORKS would have been provided by IDMWORKS but for the Employee's violation of the restriction.

11. **Attorney's Fees and Costs.** In the event a dispute arises between the parties under this Agreement and suit is instituted, the prevailing party shall be entitled to recover all reasonable attorney fees from the non-prevailing party, including any pre-suit, investigative and appellate attorney and paralegal fees, as well as costs and expenses of investigation and litigation, expert witness fees, deposition costs (appearance fees and transcript charges), injunction bond premiums, and all other taxable costs and expenses.

12. **To Provide Notice of Subpoenas, Etc.** In the event that Employee is requested or required (by law, regulation, deposition, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process) to disclose any of the Confidential Information, Employee shall provide IDMWORKS with prompt written notice of such request or requirement so that IDMWORKS may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. If, in the absence of a protective order or other remedy or the receipt of a waiver by IDMWORKS, Employee is nonetheless, in the written opinion of legal counsel, legally compelled to disclose Confidential Information, Employee may disclose only that portion of the Confidential

Information which such counsel advises Employee is legally required to be disclosed; provided that Employee exercises Employee's best efforts to preserve the confidentiality of the Confidential Information being so disclosed, including, without limitation, by attempting to obtain reliable assurance that confidential treatment will be accorded the Confidential Information.

13. **Post-Termination Information**. During the Restriction Period, Employee shall disclose to IDMWORKS on request the name and address of any employer for which Employee is supplying services, and the nature of the services being provided.

14. **Assignment; Parties Bound; Disclosure of Restrictive Covenants**. In the event the Business is sold, IDMWORKS may assign this Agreement to any purchaser of the Business, which purchaser shall be entitled to enforce this Agreement against Employee. Employee may not assign any of Employee's obligations hereunder, and any assignment in violation of the foregoing shall be null and void.

If Employee is a company, then Employee shall be responsible for ensuring that all of Employee's agents and employees comply with this Agreement, and all violations of this Agreement by Employee's agents and employees shall be deemed to be violations by Employee. Subject to the foregoing, this Agreement shall be binding upon the parties hereto and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and permitted assigns.

Employee shall disclose the existence of the restrictive covenants in this Agreement and the terms to any current and future employer(s), including such employer(s)' board of directors and executives, and will provide written notice of such disclosure(s) to IDMWORKS within 30 days of the disclosure. Further, IDMWORKS may disclose this Agreement and its terms to any future or prospective employer of Employee and to any Customer or Potential Customer of IDMWORKS, Employee, or future employer of Employee.

15. **Interpretation of Agreement**. This Agreement has been brought about by virtue of the negotiations of both IDMWOKS and Employee. Thus, should it ever become necessary to construe or interpret the terms and conditions of this Agreement, it shall be done without giving any consideration as to which of the parties may have drafted this Agreement.

16. **Governing Law; Jurisdiction; Waiver of Jury Trial**. This Agreement will be accepted and signed in the State of Florida by IDMWORKS, and the parties to this Agreement agree this Agreement and the enforceability hereof shall be governed by and construed in accordance with the internal laws of the State of Florida without regard to principles of conflict of laws. All actions or proceedings arising in connection with this Agreement shall be tried and determined only in the state and federal courts located in Miami-Dade County, Florida, and the parties hereby consent and submit to the exclusive personal jurisdiction and venue of such courts and waive any right to assert the doctrine of <u>forum non conveniens</u> or to object to venue to the extent any proceeding is brought in accordance with this provision, provided, however, this provision shall not preclude IDMWORKS from filing suit to enforce this Agreement in any other

court that can obtain personal jurisdiction over Employee. All actions or proceedings arising in connection with this Agreement shall be determined by a judge sitting without a jury.

17. **Non-Waiver of Breach**. A waiver by any party hereto of a particular breach or default by another party in connection with any provision of this Agreement must be in writing and shall not be deemed a waiver of a default by a third party or any subsequent default or breach of the same or any other provision of this Agreement.

18. **Entire Agreement; Modifications**. This Agreement contains the entire understanding of the parties hereto respecting the subject matter hereof and supersedes all prior discussions and understandings. The Agreement may not be amended, modified or changed nor shall any waiver of any provision hereof be effective, except by an instrument in writing and signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought.

19. **Invalid Provisions**. The covenants contained in this Agreement shall be deemed to be a series of separate covenants. If any court or tribunal of competent jurisdiction shall determine that any of the foregoing covenants or any part thereof is invalid or unenforceable, the remainder of the restrictive covenants shall not thereby be affected and shall be given full effect, without regard to invalid portions. Similarly, if the scope of any restriction or covenant contained herein should be or become too broad or extensive to permit enforcement thereof to its full extent, then the court is specifically authorized by the parties to enforce any such restriction or covenant to the maximum extent permitted by law, and Employee hereby consents and agrees that the scope of any such restriction or covenant may be modified accordingly in any judicial proceeding brought to enforce such restriction or covenant.

20. **Notices**. Any and all notices required or desired pursuant to this Agreement shall be in writing and delivered in person or by U.S. certified or registered mail, return receipt requested, postage fully prepaid and addressed as follows:

To IDMWORKS:

IDMWORKS, INC.
510 Madeira Avenue
Coral Gables, Florida 33134
Attn: Paul Bedi

To Employee:

Gaurav Pophaly
1514 S 12th St
Philadelphia, PA 19147

In the event of a strike or interruption in the U.S. Postal System, all notices shall be hand delivered. Either party shall have the right to change the address for notice by giving notice of any such change in the manner herein set forth for notices. For purposes of this Agreement, a notice shall not be deemed received until two (2) business days after being deposited in the U.S. mail in accordance with this Section or when personally delivered, whichever first occurs. Notice given by counsel to a party shall be deemed notice given by such party. Notwithstanding anything to the contrary herein, notice shall be deemed to have been given in accordance with

this Section if notice is received by the party to whom such notice is addressed, even if such notice is not sent to the address for such party required by this Section.

21. **Restrictions Are Reasonable.** Employee acknowledges that Employee's employment and the restrictions hereby imposed are fair and reasonable and are reasonably required for the protection of the legitimate business interests of IDMWORKS. Employee has voluntarily and knowingly entered into this Agreement and agrees that the non-solicitation and non-compete restrictions of this Agreement will not prevent Employee from finding suitable employment should Employee's employment terminate for whatever reason.

22. **Ownership of Proprietary Materials.** IDMWORKS is and shall remain the owner of all right, title and interest in and to IDMWORKS' proprietary materials, and all copies thereof, and in and to all of the related trade secrets, copyrights, patents and all other proprietary rights. Employee shall not obtain any right or license in and to IDMWORKS' proprietary materials.

23. **Ownership of Inventions.**

(a) IDMWORKS shall own all right, title and interest (including patent rights, copyrights, trade secret rights, mask work rights and other rights throughout the world) relating to any and all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by Employee during the term Employee is working for IDMWORKS to the fullest extent allowed by applicable law (collectively "Inventions"). Employee will promptly disclose all Inventions to IDMWORKS and will identify any Invention Employee believes is excluded from the scope of this Agreement. Employee hereby makes all assignments necessary to accomplish the purposes of this Paragraph. Employee shall further assist IDMWORKS, at its expense, to further evidence, record, and perfect such assignments, and to perfect, obtain, maintain, enforce and defend any rights specified to be so owned or assigned. Employee hereby irrevocably appoints IDMWORKS and its agents to act for and in Employee's behalf to execute and file any document and to do all other lawfully permitted acts to further the purpose of the foregoing with the same legal force and effect as if executed by Employee. If Employee uses or discloses its own or any third party's confidential information of intellectual property when acting within the scope of Employee's employment or otherwise on behalf of IDMWORKS, IDMWORKS will have, and Employee hereby grants, IDMWORKS a perpetual, irrevocable, worldwide, non-exclusive, sub-licensable right and license to use and exercise all such confidential information and intellectual property rights.

(b) Without limiting the preceding paragraph, all discoveries, ideas, concepts, theories, improvements, designs, original works of authorship, formulae, processes, algorithms, inventions, know-how, techniques, compositions of matter and any other information generated by Employee during the period that Employee is working for IDMWORKS, including all intermediate and partial versions thereof, as well as all documentation, program materials, flowcharts, notes, outlines and the like that are created in connection therewith (collectively, the "Work Product"), and the copyright, patent, trademark, trade secret and all other proprietary

rights in the Work Product and any derivative works created from the Work Product, shall be the sole and exclusive property of IDMWORKS. Such ownership shall inure to the benefit of IDMWORKS from the date of the conception, creation or fixation of the Work Product in a tangible medium of expression, as applicable. IDMWORKS and Employee agree that all copyright aspects of the Work Product shall be considered a "work-made-for-hire" within the meaning of the Copyright Act of 1976, as amended.

24. **Warranty of Authority**. Employee represents and warrants that Employee has the right to enter into this Agreement and that there are no outstanding agreements or obligations that would in any way prevent, limit or otherwise impair Employee's ability to effectively and efficiently perform for IDMWORKS the Services for which Employee has been hired. Without limiting the preceding sentence, Employee represents that at the time this Agreement is signed, Employee's performance of the Services does not violate any confidentiality or non-competition agreements that Employee has signed with any prior employer. Furthermore, Employee represents that Employee is not subject to any confidentiality or non-competition agreements (other than this Agreement), other than those agreements (if any) which Employee has delivered to IDMWORKS prior to signing this Agreement. All information previously or hereafter furnished by Employee to IDMWORKS can legally be disclosed to IDMWORKS and Employee is not violating any confidentiality or other agreement with any third party by providing such information to IDMWORKS. During the period Employee is providing Services for IDMWORKS and during the Restriction Period after Employee ceases working for IDMWORKS, Employee will not enter into any agreements with other persons that would violate his obligations under this Agreement.

25. **Surviving Provisions**. All of the provisions of this Agreement, including, but not limited to, the restrictions and remedies, survive the termination of Employee's employment, irrespective of the grounds or reasons for such termination, including termination by IDMWORKS with or without notice or cause.

26. **Complete Agreement.** This Agreement represents the complete agreement between Employee and IDMWORKS regarding the subject matter of this Agreement. Employee acknowledges and agrees that no representation, promise, or agreement regarding the subject matter of this Agreement has been made to or with Employee that is not set forth in this Agreement. Any representations or agreements regarding the subject matter of this Agreement not explicitly included in this Agreement are considered waived and unenforceable. Any previous agreements between IDMWORKS and Employee regarding the subject matter of this Agreement are hereby superseded by execution of this Agreement, and shall be devoid of any continuing force or effect. This Agreement is in no way dependent upon the performance of any other contract or agreement that may have been or may be entered into between Employee and IDMWORKS, and the breach or alleged breach of any other contract or agreement is no defense to enforcement of this Agreement.

27. **Acknowledgment**. Employee acknowledges that Employee has read this Agreement in full and completely understands all of its terms and obligations and enters into this Agreement freely and voluntarily.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

| Employee<br>**Agreed and Accepted:** | **Accepted in Miami, Florida:**<br><br>**IDMWORKS, INC.** |
|---|---|
| *DocuSigned by:*<br>*Gaurav Pophaly*<br>A7444F04B4B94AD...<br>Date: 12/8/2013 | By *DocuSigned by:*<br>*Paul Bedi*<br>231A72F84B1F43B...<br>**Paul Bedi, Managing Director**<br>Date: 12/9/2013 |