# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

**IDMWORKS, LLC,**                                      **Case No. 16-cv-20627-JAL**

        Plaintiff,

**v.**

**GAURAV POPHALY,**

        Individual.

_____ /

## DEFENDANT'S RESPONSE IN OPPOSITION
## TO MOTION FOR TEMPORARY INJUNCTIVE RELIEF

Defendant, Gaurav Pophaly ("Defendant"), by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 65, files this Response in Opposition to Plaintiff's Motion for Temporary Injunctive Relief and in support states as follows:

## INTRODUCTION

IDMWORKS, LLC ("IDMWORKS" or "Plaintiff") seeks a preliminary injunction barring Defendant from working for Ernst & Young Global Services LLP ("EY") pending trial on the merits. Plaintiff's entire case is based on the premise that Defendant stole its confidential information and is now using that information to work for Plaintiff's former client, EY. DE 5 at 1. Plaintiff argues from a faulty premise. First, all of the information at issue belongs to EY. Second, EY was never Plaintiff's client. And finally, Defendant's current role at EY is different from the job he performed while working for Plaintiff. Defendant is not in breach of his restrictive covenants.

1

Further, the restrictive covenants do not qualify as valid restraints on trade per §542.553, Florida Statutes, and are therefore illegal. FLA. STAT. § 542.18 (2015). Defendant respectfully requests that this Court deny Plaintiff's Motion for Temporary Injunctive Relief.

### Factual Background

Prior to joining IDMWORKS, Defendant had worked in the information technology industry for over fourteen years. Pophaly Decl. Ex. A, at ¶3. He had extensive knowledge of software development and implementation, and he had worked for several other information technology employers. *Id.* at ¶¶4, 5. Plaintiff employed Defendant as an Identity and Access Manager starting in 2012. *Id.* at ¶6. Defendant executed a Confidentiality, Non-competition, and Non-Solicitation Agreement (the "Agreement") on December 8, 2013. During the course of Defendant's employment, Plaintiff agreed that Defendant would receive annual reviews and raises. *Id.* at ¶8. Defendant subsequently left Plaintiff's employ January 12, 2016 after giving proper notice. *Id.* at ¶46.

During Defendant's employment with Plaintiff, Defendant was responsible for implementing identity and access management (IAM) solutions. *Id.* at ¶¶7, 50. Identity and access management systems identify individuals in an organization and control their access to company information and programs. During his employment, Defendant independently studied for and earned several optional certifications in identity and access management and related software programming. *Id.* at ¶¶12-15. In September 2014, Plaintiff assigned Defendant to provide Oracle Identity Manager services to a company called Clearpath. *Id.* at ¶23. Clearpath in turn provided services to EY and assigned Defendant to an EY project. *Id.* at ¶¶24, 25. Plaintiff did not have a contract to provide services to EY and never serviced EY directly. *Id.* at ¶27. EY was never Plaintiff's client.

There were several negative aspects of Defendant's employment with Plaintiff. Defendant was treated discriminatorily. Specifically, he was called a "faggot" by a supervisor on several occasions. *Id.* at ¶18. Plaintiff also directed Defendant and other employees to steal client information when possible. *Id.* at ¶19. Defendant also became aware that Plaintiff had poached employees from clients. *Id.* at ¶¶20, 21.

In November 2015, EY offered Defendant employment. *Id.* at ¶31. Defendant did not accept and notified Plaintiff of the offer. *Id.* at ¶32. Plaintiff responded to EY's offer by threatening to remove its employees from the Clearpath / EY project. *Id.* at ¶33. Prior to Plaintiff's threats, EY planned to extend its contract for IAM services beyond the December 31, 2015 expiration date. *Id.* at ¶35. However, EY later contracted with a company called Aptec to replace Defendant and the other IDMWORKS employees that were subcontracted out to EY by Clearpath. *Id.* at ¶34. In order to facilitate the transition from IDMWORKS to Aptec, EY directed Defendant and another IDMWORKS employee, Robert Kimball, to provide information files to Aptec. *Id.* at ¶37; Email Ex. B; Ex. C. Defendant and Kimball provided this information to Aptec by uploading EY's files from EY computers to Plaintiff's Google Drive. Pophaly Decl. Ex. A, at ¶¶38-41; Ex. D. EY made a second employment offer to Defendant in late December. *Id.* at ¶44. Defendant accepted and gave Plaintiff notice that he was leaving in early January. *Id.* at ¶¶45, 46. Defendant now works at EY as the Assistant Director of Identity Management Engineering, which entails designing, engineering, and overseeing the implementation of identity access solutions. *Id.* at ¶¶47-50.

## **STANDARD**

Even in diversity cases, Rule 65 of the Federal Rules of Civil Procedure governs the issuance of preliminary injunctions. *See Ferrero v. Assoc. Material, Inc.*, 923 F.2d 1441, 1448

(11th Cir. 1991) (federal procedural law governs issuance of preliminary injunctions). Under federal law, a movant seeking a preliminary injunction must demonstrate (1) a substantial likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest. *Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir. 2011).

**MEMORANDUM OF LAW**

## I.  PLAINTIFF DOES NOT HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

To succeed on the merits, Plaintiff must (1) demonstrate that Defendant breached the Agreement, (2) demonstrate that the restrictive covenants contained therein are enforceable, and (3) defeat each of Defendant's affirmative defenses. *See Cordis Corp. v. Prooslin*, 482 So. 2d 486, 490 (Fla. 3d DCA 1986) (determining that likelihood of success on the merits involves both proving plaintiff's claims and overcoming defendant's affirmative defenses). Plaintiff is not entitled to injunctive relief if it has not substantially overcome each of these barriers to success on the merits.

First, this Court must determine whether Defendant has breached the restrictive covenants. *See Sarasota Beverage Co. v. Johnson*, 551 So. 3d 503, 507-09 (Fla. 2d DCA 1989) (remanding with direction to make a finding as to whether former employee breached the employment agreement before the court could properly issue a preliminary injunction enforcing the restrictive covenants). Plaintiff cannot demonstrate that Defendant breached the Agreement because Defendant is not engaging in any conduct that the Agreement prohibits.

Second, Plaintiff must demonstrate that restrictive covenants are reasonably necessary to protect a legitimate business interest. § 542.335. A legitimate business interest may include trade

4

secrets; valuable confidential information; substantial customer relationships; goodwill; or extraordinary or specialized training. § 542.335(1)(b). A restrictive covenant cannot be more expansive than is necessary to protect a specific legitimate business interest and a court must narrow a covenant if it is overbroad, overlong, or otherwise unreasonable. § 542.335(1)(c); *Shields v. Paving Stone Company, Inc.*, 796 So. 2d 1267, 1268-69 (Fla. 4th DCA 2001) (narrowing a non-solicitation clause where employer "did not provide sufficient evidence to support the overinclusive nature of the restrictive covenants"). The covenants at issue here are not reasonably necessary to protect any of Plaintiff's alleged legitimate business interests, if such interests exist in the first place.

Finally, Plaintiff does not have a substantial likelihood of success because Plaintiff cannot overcome Defendant's affirmative defenses. *Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Co-op Productions, Inc.*, 479 F.Supp. 351, (N.D. Ga. 1979), *citing Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir. 1974) ("On a motion for preliminary injunction, Plaintiffs must demonstrate a likelihood of success on the merits at trial as to asserted affirmative defenses, as well as to the elements of Plaintiffs' prima facie case.").

### a. <u>Defendant has not Breached the Agreement</u>

Defendant has not breached the Agreement for two reasons. First, the Agreement excludes from its definition of Confidential Information any information that an employee lawfully obtains from another source.[1] Here, Defendant obtained the information he uploaded to Plaintiff's Google Drive from EY. The information originated at EY and was uploaded from an

---

[1] "Confidential Information shall not include any information which: (i) . . . or (ii) becomes lawfully available to Employee from a source other than IDMWORKS or its agents or representative provided that such source is not subject to or bound by any duty or obligation of confidentiality with respect to such information." Agreement Part 3(b).

EY computer. Thus, the information at issue became lawfully available to Defendant from a source other than Plaintiff. It is therefore excluded from the definition of Confidential Information, and Defendant has not breached the confidentiality provisions of the agreement. *See* Agreement Part 3(b).

Second, the Agreement does not prohibit Defendant's relationship with EY. The Agreement prohibits defendant from "provid[ing] services of any kind to any company that Employee has previously provided consulting services to on behalf of IDMWORKS." Agreement Part 4(a).[2] The language of the Agreement takes it plain meaning. *Marx v. Clear Channel Broadcasting*, 887 So.2d 405, 406 (Fla. 4th DCA 2004) (holding in the non-compete context that the meaning and intention of the parties is reflected by the plain language of the written document); *Zimmer v. Pony Exp. Courier Corp. of Fla.*, 408 So. 2d 595, 597 (Fla. 2d DCA 1981), *citing Storz Broadcasting Co. v. Courtney*, 178 So.2d 40, 42 (Fla. 3d DCA 1965) ("[Non-compete agreements] . . . will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires."). Defendant never provided consulting services to EY "on behalf of" IDMWORKS. Instead, EY received services from Clearpath. Any services that Defendant provided to EY were provided on behalf of Clearpath, not Plaintiff. Thus, Defendant's employment by EY is not contrary to the plain language of restrictive covenants contained in the Agreement.

### b.   <u>The Restrictive Covenants are not Necessary to Protect any Alleged Legitimate Business Interest</u>

Plaintiff does not have a substantial likelihood of success on the merits because it has not sufficiently pled or proven the existence of a legitimate business interest. § 542.335(b). More to

---

[2] Parts 4(b), (c), and (d) provide additional non-compete provisions but are not pertinent to the instant case.

the point here, Plaintiff will ultimately fail to demonstrate a substantial likelihood of success on the merits "because Florida statutory law (as a matter of public policy) does not allow a party to enforce a restrictive covenant unless it proves that enforcement is necessary to protect its legitimate business interests." *Evans v. Generic Sol. Eng'g, LLC*, 178 So. 3d 114, 116 (Fla. 5th DCA 2015). Under these facts, Plaintiff's attempt to enforce the Agreement is not reasonably necessary. § 542.335(c).

### i.   The Information at Issue Belongs to EY

As an initial matter, Plaintiff has not sufficiently pled the existence of any trade secrets in either its Complaint or Motion.[3]

Turning to the real issue, the information that Plaintiff alleges Defendant stole did not belong to Plaintiff—it belonged to EY.[4] Defendant uploaded EY's information to Plaintiff's

---

[3] A claim for misappropriation of trade secret information under Florida law requires the claim to be pled with reasonable particularity. *Levenger Co. v. Feldman*, 516 F.Supp. 2d 1272, 1287 (S.D. Fla. 2007), *citing Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F.Supp. 2d 1322, 1324 (S.D. Fla. 2001). Specifically, a plaintiff "must allege facts giving rise to a reasonable inference that (1) 'the plaintiff possessed secret information and took reasonable steps to protect its secrecy' *Medimport S.R.L. v. Cabreja*, 929 F.Supp. 2d 1302, 1322 (S.D. Fla. 2013); (2) the secret it possessed was misappropriated . . . by one who used improper means to obtain it' *id.*; see § 688.002; and (3) the secret 'derives independent economic value' from not being generally known or ascertainable through proper means §688.002." *ABB Turbo Systems AG v. Turbousa, Inc.*, 774 F.3d 979, 985 (Fed. Cir. 2014). Plaintiff fails to meet these requirements because the files it identified as stolen belonged to EY and were therefore not secret. *See* DE 1 at ¶19 (listing EY files that Defendant allegedly stole from Plaintiff).  Plaintiff also did not allege or otherwise demonstrate how those files derive independent economic value. *Id.*

[4] Defendant notes that the Complaint itemizes six (6) files that were allegedly "stolen" by Defendant. DE 1 at ¶19. Each of the software files were either created or updated "at the request of a customer." *Id.* Plaintiff fails to allege which of its alleged customers this work-for-hire was developed for. Regardless, the files created for EY fall within the work made for hire exception and ownership rights vest in the individual or entity that requested for work made for hire. *See Genzmer v. Pub. Health Trust of Miami-Dade Cty.*, 219 F.Supp. 2d 1275, 1279 (S.D. Fla. 2002) ("[T]he rights in a work initially vest in the author of the work. *See* 17 U.S.C. § 201(a). There is an exception to this rule if the work was made for hire.").

Google Drive using an EY computer at the direction of EY.[5] Defendant then provided the information to Aptec at the direction of EY. The restrictive covenants at issue cannot reasonably protect against information disseminated at the behest of its owner. In this context, the information was not confidential.

Furthermore, assuming *arguendo* that the information at issue belonged to IDMWORKS, enforcement of the restrictive covenants would still not be reasonably necessary to protect the Plaintiff's interest in the information because the information is otherwise available to Aptec, as evidenced by Defendant having received the information from EY, not from Plaintiff. *Cf. Passalacqua v. Neviant, Inc.*, 844 So.2d 792 (Fla. 4th DCA 2003) (reversing injunction where information at issue was publically available).

EY directed Defendant—who had been outsourced by Plaintiff to Clearpath—to make EY's information available to Aptec, the firm that would replace IDMWORKS' employees. The information never belonged to Plaintiff. It was uploaded to Plaintiff's Google Drive for purely transitional purposes. EY had already made the decision to replace IDMWORKS' employees with Aptec's employees. Thus, Defendant did not give a competitive advantage to Aptec by supplying the information necessary for the transition. Plaintiff therefore has no protectable valuable confidential information or trade secrets, and Defendant did not misappropriate any of Plaintiff's information.

### ii.   Plaintiff Did Not Have a Substantial Customer Relationship With EY

Plaintiff did not have a substantial customer relationship—or any customer relationship at all—with EY. EY was never Plaintiff's customer. Clearpath was Plaintiff's customer. Plaintiff contracted out Defendant to provide services to Clearpath. Clearpath then subcontracted

---

[5] Plaintiff admits that the data was "uploaded" to its data storage, but tellingly does not reveal where the data was uploaded from. DE 1 at ¶18.

Defendant to EY. There was no protectable customer relationship between Plaintiff and EY because there was (1) no written agreement, (2) no exclusivity, and (3) no direct relational line between Plaintiff and EY. *See Evans v. Generic Solution Engineering, LLC*, 178 So.3d 114, 117-18 (Fla. 5th DCA 2015) (finding no substantial customer relationship where plaintiff did not have exclusive contracts or a reasonable expectation that it would continue to provide services because contract was set to expire); *Concrete Surface Innovations, Inc. v. McCarty*, 2010 WL 1930971, at *8 (M.D. Fla. May 13, 2010) (noting that the existence of multiple layers of contractors and sub-contractors between the vendor and the end customer militates against the existence of substantial relationships).

Even if this court finds that there could be a substantial relationship in this context, that relationship was between EY and Clearpath—and EY terminated the Clearpath / IDMWORKS arrangement because Plaintiff threated to pull its employees off of the EY project. Any arrangement between Plaintiff and EY ended due to no fault of Defendant. Thus, there was no relationship between Plaintiff and EY when Plaintiff was hired by EY. Defendant did not interfere with Plaintiff's relationship with EY because no relationship between the two existed.[6] *See, e.g. Envtl. Servs., Inc. v. Carter*, 9 So. 3d 1258, 1265 (Fla. 5th DCA 2009) ("[P]rotection of former customers generally does not qualify as a legitimate business interest where no identifiable agreement exists with such customers establishing that they would return with future work.").

Under these facts, Plaintiff cannot demonstrate that enforcement of the restrictive covenants is necessary to protect its alleged relationship with EY—and its alleged relationship with EY is the only relationship at issue.

---

[6] Plaintiff also alleges the loss of other advantageous business relationships, but Plaintiff fails to identify any other customer implicated by Defendant's alleged actions.

### iii.    Plaintiff's Goodwill Is Not at Issue

Plaintiff advances three arguments regarding goodwill: (1) Defendant tortiously interfered with Plaintiff's relationship with EY, (2) Defendant is now competing with Plaintiff by providing the same services to EY, and (3) Plaintiff will not be regarded as a trustworthy custodian of customer information because Defendant allegedly stole information. Each of these arguments fails.

Plaintiff's own actions prevented Plaintiff from receiving any further benefit from EY's relationship with Clearpath. As such, Plaintiff's alleged goodwill is not in jeopardy. "The goodwill of a business may be defined as the advantage or benefit the business has beyond the mere value of its property and capital." *Swann v. Mitchell*, 435 So. 2d 797, 799 (Fla. 1983). This advantage or benefit is frequently referred to in terms of the business's expectancy of continued patronage. *See Held v. Held,* 912 So. 2d 637, 639 (Fla. 4th DCA 2005) ("One frequently cited definition of goodwill is that it is nothing more than the probability that the old customers will resort to the old place." (internal quotations omitted)). Here, Plaintiff's goodwill is interwoven with customer relationships, or lack thereof. Because Plaintiff did not have a relationship with EY—and because EY does not desire to work with Plaintiff in the future—Plaintiff's first two arguments fail by default.

As for Plaintiff's third argument, Plaintiff posits that the industry will frown upon Plaintiff's employee acting at the direction of EY with respect to EY's information; that Plaintiff will no longer be viewed as "a trustworthy custodian of data or assets for its customers" because Defendant did with EY's information what EY wanted done with it. Following Plaintiff down that rabbit hole would require discarding all logic. Suffice it to say that Plaintiff's argument fails.

The fact of the matter is that Plaintiff has harmed its own goodwill. EY's replacement of IDMWORKS employees with Aptec is most accurately characterized as a result of the harm Plaintiff did its goodwill when it threatened to pull its employees off of the EY / Clearpath project. Plaintiff's Motion should be denied.

### iv.  Plaintiff Did Not Provide Extraordinary or Specialized Training

Plaintiff alleges that it has a legitimate business interest in the training it provided Defendant. Training constitutes a legitimate business interest protectable by an injunction only when the training rises the level of being specialized or extraordinary. § 542.335(1)(b)(5). This means that training must go beyond that typically offered in any given industry. *Autonation Inc. v. O'Brien*, 374 F.Supp. 2d 1299, 1306 (S.D. Fla. 2004) (requiring that training exceed what is common or typical in the industry before it can become a protectable interest); *Dyer v. Pioneer Concepts Inc.*, 667 So. 2d 961 (Fla. 2d DCA 1996), *citing Hapney v. Central Garage, Inc.*, 579 So. 2d 127, 132 (Fla. 2d DCA 1991) ("Training is extraordinary when it exceeds what is usual, regular, common, or customary in the industry in which the employee is employed."). Plaintiff failed to demonstrate that Defendant's training is protectable.

First, nothing in Plaintiff's Complaint or Motion explains how the training Defendant received is exceptional or specialized within the industry—instead, the training Defendant received was standard, if not less than what is typically provided within the industry due to Defendant's expansive knowledge of the industry prior to joining IDMWORKS.

Second, Defendant had already been in the information technology industry for fourteen years before working for Plaintiff. He had worked for other information technology companies and had extensive knowledge of software development and implementation prior to joining IDMWORKS. Employers have less of an interest in enforcing non-compete agreements against

11

industry veterans who necessarily require less of a training investment by employers. *Compare Austin v. Mid State Fire Equipment of Cent. Fla., Inc.,* 727 So.2d 1097, 1098 (Fla. 5th DCA 1999) (limiting the scope of an injunction issued by lower court because former employee had been in the industry for over sixteen years and had worked for other companies in the industry) *with Milner Voice & Data, Inc. v. Tassey*, 377 F.Supp. 2d 1209, 1218 (S.D. Fla. 2005) (finding enforcement of a restrictive covenant to be reasonably necessary to protect former employer's interest in training where employer invested over $18,000 in training a novice mechanic).

Finally, Plaintiff does not have a protectable interest in Defendant's training because the training was optional. *Austin*, 727 So. 2d at 1098 (finding that optional training did not rise to the level of specialized or extraordinary training and did not constitute a legitimate business interest protectable by injunction).

Because Plaintiff does not have a protectable interest in training, enforcement of the restrictive covenants cannot be reasonably necessary. Furthermore, even if Plaintiff did provide extraordinary or specialized training, enforcement of the restrictive covenants would still not be reasonably necessary because Defendant did not leverage that training to gain employment with EY. *See* John A. Grant, Jr. & Thomas Steele, *Restrictive Covenants: Florida Returns to the Original "Unfair Competition" Approach for the 21st Century*, 70 (Nov.) Fla. B.J. 53, 55 (1996) (reasoning that a "legitimate business interest" must represent an investment by the employer and must enable unfair competition if misappropriated). Plaintiff expended minimal resources in allowing Defendant to obtain optional certificates. Defendant also did not gain an unfair competitive advantage by virtue of the limited training because Defendant was already qualified to work in his current position at EY. Thus, enforcement of the restrictive covenants does not

protect Plaintiff's minimal investment in Defendant's training, and therefore cannot be reasonably necessary to protect an interest in training.

### c. <u>Plaintiff Cannot Defeat Defendant's Affirmative Defenses</u>

Defendant presented the following three affirmative defenses in its Answer and Affirmative Defenses: illegality, prior breach, and unclean hands. Section 542.335(g)(3), Florida Statutes, requires a court to consider these affirmative defenses when determining the enforceability of restrictive covenants. The defenses therefore bear upon Plaintiff's likelihood of success on the merits.

### i.   Illegality

Plaintiff cannot defeat Defendant's affirmative defense of illegality. FLA. STAT. § 542.18 (2015). The restrictive covenants are illegal because they lack a legitimate business interest to support them. See § 542.355(b). Further, the restrictive covenants are overbroad, overlong, and otherwise unreasonable. Therefore, the restrictive covenants are unenforceable and Plaintiff cannot succeed on the merits.

### ii.   Prior Breach

Plaintiff also cannot seek injunctive relief because of the doctrine of prior breach. A party cannot enforce an agreement if it is already in breach. *See Mattocks v. Black Entertainment Television, LLC*, 43 F.Supp. 3d 1311, 1319-20 (M.D. Fla. 2014), *citing Indem. Ins. Corp of D.C. v. Caylao*, 130 So.3d 783, 786 (Fla. 1st DCA 2014) ("It is a fundamental principle of Florida contract law that a material breach by one party excuses performance by the other party.").

Here, Plaintiff did not give Defendant a timely review and salary increase in his third year of employment.[7] These promises served as consideration for the Agreement. Plaintiff's breach of the employment agreement destroys Defendant's consideration for the Agreement and the agreement is void as a result.

### iii.   Unclean Hands

Finally, Plaintiff cannot overcome Defendant's third affirmative defense of unclean hands. A party is not entitled to equitable relief when it comes to the court with unclean hands. *See Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945) ("[The doctrine of unclean hands] closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relieve, however improper may have been the behavior of the defendant."); *Manhattan Medicine Co. v. Wood*, 108 U.S. 218, 225 (1883) ("[H]e who seeks equity must present himself to the court with clean hands"). Here, Plaintiff comes to the court with unclean hands for three reasons. First, Plaintiff has a history of engaging in poaching employees from clients with whom it had a contract—two examples are Richard Kimball and Justin Hinerman.[8] Second, Plaintiff asked Defendant and other employees to steal documents from clients, but now complains that Defendant stole information of that same nature from Plaintiff, an allegation that Defendant vehemently denies.[9] Lastly, Plaintiff discriminated against Defendant. Specifically, a supervisor employed by

---

[7] These terms were adopted by the parties via email and are modifications to the employment agreement. Plaintiff is in possession of these emails.

[8] Mr. Kimball and Mr. Hinerman both worked for West Virginia University. Mr. Kimball and Mr. Hinerman received offers from Plaintiff while still employed at the University and while Plaintiff had a contract to provide information technology services to the University.

[9] Defendant did not comply with Plaintiff's requests to steal documents from clients and grew uneasy in Plaintiff's employ due to Plaintiff's unethical business practices.

Plaintiff repeatedly referred to Defendant as a "faggot" during Defendant's tenure with the Company.

Plaintiff cannot advance a cause of action based on alleged behavior in which it has repeatedly engaged. Plaintiff cannot enforce the restrictive covenants against Defendant who left Plaintiff's employ in part based on Plaintiff's request that Defendant behave illegally and immorally. Plaintiff cannot enforce restrictions against an employee who it treated with discriminatory animus. Plaintiff's unclean hands bar equitable relief.

In sum, Plaintiff has not sufficiently plead and proved the existence of trade secrets; valuable, confidential information; substantial customer relationships; customer goodwill; or specialized or extraordinary training. Without a legitimate business interest to justify enforcement of the restrictive covenants, the restrictions are illegal and Plaintiff does not have a substantial likelihood of success on the merits. §542.18; *Austin*, 727 So. 2d at 1098, *citing* John A. Grant, Jr. & Thomas Steele, *Restrictive Covenants: Florida Returns to the Original "Unfair Competition" Approach for the 21st Century*, 70 Fla. B.J. 53, 55 (Nov. 1996). Furthermore, even if Plaintiff is able to demonstrate the existence of some legitimate interest in the abstract, enforcement of the covenants here is unnecessary to protect any such interest. Finally, Plaintiff will be unable to defeat Defendant's affirmative defenses.

## II.  THE RESTRICTIVE COVENANTS ARE OVERBROAD AND OVERLONG

Restrictive covenants that are overbroad or overlong must be judicially tailored to be no more prohibitive that what is reasonably necessary to protect an employer's legitimate business interest. § 542.335(1)(c). First, the Noncompetition restrictive covenants contained in Part 4 of the Non-Competition Agreement are overbroad because of the scope of potential employers captured by the provisions. Specifically, under the Noncompetition provisions, Defendant is

prohibited from working for (1) any company he provided services to on behalf of IDMWORKS in the past; (2) any company that IDMWORKS has an agreement with regardless of Defendant's total lack of interaction with that company; and (3) any other company that any IDMWORKS employee has ever provided services to (before or during his/her employment with IDMWORKS) regardless of whether Defendant was employed by IDMWORKS when those services were rendered. *See* Agreement at Part 4. This restriction is overbroad because it is not tailored to protect Plaintiff's substantial relationships or otherwise protect any legitimate business interest. The effect of these restrictions is to prohibit competition per se, which is illegal. *See Colucci v. Kar Kare Auto. Grp., Inc.*, 918 So. 2d 431, 440 (Fla. 4th DCA 2006) ("[W]e cannot uphold an agreement whose sole purpose is to prevent competition per se; such agreements are void as a matter of public policy.").

Additionally, the restrictive covenants are overlong. The  Agreement states that its provisions are effective for two years following termination of Defendant's employment. The two-year period of time is unreasonable in the context of the instant case for two reasons. First and foremost, Defendant had already worked in this industry for fourteen years prior to joining IDMWORKS. Defendant was highly qualified and well-established in the industry. Two years is too long of a period to exclude Defendant from job opportunities that he was qualified for prior to joining IDMWORKS. Second, the nature of the information technology industry should also be taken into account—any information or training provided to Defendant by Plaintiff quickly became stale in the quickly evolving technology sector. The two-year restriction period does not protect a legitimate business interest. Instead, the effect of this extended restriction period is also to prohibit competition per se.

## III. DEFENDANT DID NOT TORTIOUSLY INTERFERE WITH PLAINTIFF'S RELATIONSHIP WITH EY

Plaintiff alleges that Defendant tortiously interfered with Plaintiff's relationship with EY. A claim for tortious interference with a business relationship requires the following four elements: (1) the existence of a business relationship, (2) defendant's knowledge of the relationship, (3) an intentional, unjustified interference with the relationship by defendant, and (4) damage to plaintiff as a result of the breach of the relationship. *Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, 2015 WL 5604786, at *7 (M.D. Fla. 2015), *citing Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).

Plaintiff's first problem is that it did not have a relationship with EY. It had a relationship with Clearpath. When assessing whether tortious interference occurred, a business relationship must be "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Auto Body, Inc.*, 2015 WL 5604786, at *8, *citing Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). In this case, there was no agreement that would have been completed even if Defendant had not interfered. Thus, Plaintiff will lose on this claim both because no relationship existed and because Defendant had no knowledge that a relationship existed.

Second, even if a relationship existed, Defendant did not breach the Agreement. Any alleged interference he committed by way of negotiating with EY to procure gainful employment was justified. As demonstrated *supra*,  EY was perturbed by the threats Plaintiff made regarding pulling IDMWORKS employees off of Clearpath's EY project following EY's employment offer to Defendant. Defendant was a passive party in the events that lead to EY replacing Clearpath with Aptec. Thus, there was no intentional, unjustifiable interference by Defendant as

required for a claim of tortious interference.  Plaintiff cannot succeed on the merits of its claim for tortious interference.

## IV. <u>THERE IS NO LIKELIHOOD OF IRREPARABLE HARM</u>

Plaintiff has failed to demonstrate a likelihood of irreparable injury. Contrary to Plaintiff's contention, Plaintiff is not entitled to a presumption of irreparable injury.[10] Pursuant to the *Erie* Doctrine, federal courts siting in diversity apply federal procedural law. *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002). Federal courts derive their authority to issues injunction from Rule 65, and Rule 65 requires that a movant actually show irreparable harm. *Southern Wine & Spirits of Am. v. Simpkins*, 2011 WL 124631, at *8 (S.D. Fla. 2011). Therefore, Plaintiff must demonstrate irreparable harm.

No injunction can issue under Rule 65 unless the asserted irreparable injury is "actual and imminent," not merely remote or speculative. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Plaintiff has failed to allege or otherwise demonstrate how it is currently suffering or will prospectively suffer irreparable harm absent an injunction. Specifically, there is no irreparable harm with respect to confidential information because the information at issue never belonged to Plaintiff and because the information at issue falls outside of the definition of Confidential Information in the Agreement. *See* Agreement at Part 3(b). There is also no irreparable harm with respect to Defendant working for EY. EY is not a competitor who can gain an unfair competitive advantage based on Defendant's employ and EY has no interest in hiring Plaintiff or its employees. Further, Defendant's employment with EY falls outside of the behavior prohibited by the Agreement because Defendant never provided services to EY and

---

[10] Plaintiff asserts that it is entitled to a presumption of irreparable injury under § 542.335, Florida Statutes. DE 5 at at 3-4. Plaintiff failed to apply the federal standard for issuing an injunction under Rule 65.

because any services provided were not provided on behalf of IDMWORKS. *See* Agreement Part 4(a). Thus, Plaintiff has not demonstrated an irreparable injury that justifies the issuance of a preliminary injunction.

## V.  <u>THE HARM THAT AN INJUNCTION WOULD CAUSE DEFENDANT OUTWEIGHS ANY ALLEGED THREATENED INJURY TO PLAINTIFF</u>

Plaintiff provides two flawed bases for its position that the threatened injury to Plaintiff outweighs the harm that an injunction would cause Defendant. First, Plaintiff reasons that Defendant was conferred a competitive advantage by virtue of his employment with Plaintiff. To be clear, Plaintiff is now in competition with Aptec for EY's business. Neither EY nor Defendant is competing with Plaintiff. No competitive advantage has been conferred.

Second, Plaintiff argues that customers will no longer trust Plaintiff's custodianship of confidential information based on the allegation that Defendant stole information. Beyond the fact that Defendant never stole information, Plaintiff fails to explain how an injunction would restore customer trust in light of an alleged theft. No irreparable harm can stem from Defendant uploading EY's information for transitional purposes at EY's direction.

Defendant on the other hand faces considerable harm. The Agreement bars Defendant from becoming employed by any of Plaintiff's competitors. The Agreement bars Defendant from becoming employed by any of Plaintiff's customers. If an injunction issues here, the Agreement would be enforced to bar Defendant from remaining employed by a **customer of Plaintiff's customer.** Defendant would thereby be left guessing how many degrees of separation need to exist between his former employer and any prospective future employer in order to avoid violating the Agreement or this Court's Order.  In short, Defendant would be unable to ply the trade he has developed over the course of the past eighteen years. Defendant's harm if enjoined

is therefore unquantifiable and far surpasses the nonexistent harm posed to Plaintiff if the injunction does not ensue.

## VI. INJUNCTIVE RELIEF DISSERVES THE PUBLIC INTEREST

The public's interest here rests squarely in the degree to which Florida law enforces contracts. Here, the public's interest is in ensuring that contractual agreements are enforced to the extent that they are in accord with Florida law. Because the restrictive covenants at issue here are not reasonably necessary to protect Plaintiff's alleged interests, they are unenforceable in this context. Issuance of an injunction in this case would disserve the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiff's Emergency Motion for Injunctive Relief should be denied in its entirety.

Dated April 4, 2016                                  Respectfully submitted,

                                                     By: s/ Nathan Saunders

                                                     Nathan M. Saunders
                                                     Florida Bar No.: 107753
                                                     nsaunders@pollardllc.com

                                                     Jonathan E. Pollard
                                                     Florida Bar No.: 83613
                                                     jpollard@pollardllc.com

                                                     Pollard PLLC
                                                     401 E. Las Olas Blvd. #1400
                                                     Fort Lauderdale, FL 33301
                                                     Telephone: 954-332-2380
                                                     Facsimile: 866-594-5731

                                                     *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing to be electronically filed on April 4, 2016. All registered counsel are to receive notice of the filing via the Court's electronic case filing system.

                                                     By: s/ Nathan Saunders